In re Michael R. LYNCH, Debtor.

Betty Bryant as Conservator for
Everald Grace Nichols,
Plaintiff,

v.

Michael R. Lynch, Defendant.

Bankruptcy No. 01–21790 EEB.
Adversary No. 01–1530 EEB.

United States Bankruptcy Court,
District of Columbia.

Sept. 22, 2004.

John L. Latta, John Case, Benson & Case, LLP, Denver, CO, for Plaintiff.

Michael R. Lynch, Bent County Correctional Facility, Las Animas, CO, pro se.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Defendant's Motion for Summary

Judgment (the "Motion"), Plaintiff's Response, and Defendant's Reply, and on Plaintiff's Cross Motion for Summary Judgment (the "Cross Motion"), Defendant's Response, Plaintiff's Response to Order March 9, 2004, the Affidavit and Supplemental Affidavit of Defendant, and Plaintiff's Motion to Supplement Plaintiff's Response to Order March 9, 2004. The Court being otherwise advised in the premises, hereby FINDS and CONCLUDES:

**A. Background Facts**

For purposes of ruling on the instant motions, the record considered by the Court is very sparse. It is comprised of copies of (1) the Amended Complaint, in Civil Action No. 00 CR 3757 (the "criminal action"), alleging theft and conspiracy to commit theft, of the Plaintiff's funds; (2) various jury instructions, including an instruction outlining the elements of theft under Colorado statute as applied to Defendant's alleged theft of Ms. Nichols' funds; (3) a Jury Verdict, finding Defendant guilty of theft in the criminal action; (4) a Judgment of Conviction, dated January 7, 2002, entered in the criminal action, imposing a sentence of incarceration on the Defendant of fourteen years; and (5) an Amended Judgment of Conviction, Sentence, dated May 20, 2003, in the criminal action, reducing the restitution award owed by Defendant from $161,192.00 to $160,989.26, and crediting Defendant with 556 days (as opposed to 58 days) served against a sentence of fourteen years. These filings show that the Defendant was convicted of the theft of Plaintiff's money, sentenced to fourteen years, and ordered to pay restitution in the amount of $160,989.26. It is undisputed that Defendant has appealed his conviction, which appeal remains pending, but which has not been stayed on appeal.

On the basis of these facts, in his Motion, Defendant has argued that the Court should enter summary judgment, dismissing the sole claim of Plaintiff's Amended Complaint, under Section 523(a)(4). His sole argument for dismissal is based on his allegation that a claim under this section requires that Plaintiff establish: (1) the existence of a "fiduciary relationship," within the meaning ascribed by the Tenth Circuit in *In re Young*, 91 F.3d 1367 (10th Cir.1996); and (2) an act of fraud or defalcation committed by the debtor/fiduciary. Plaintiff has responded by stating, among other things, that Section 523(a)(4) also includes acts of larceny and embezzlement as nondischargeable claims, which do not require a showing of a fiduciary relationship.

In her Cross Motion, Plaintiff seeks the entry of summary judgment on the basis that the prior criminal conviction precludes the Court from retrying the factual issues underlying her larceny claim, and requires the Court to enter judgment in her favor under Section 523(a)(4) for "larceny." The Defendant disputes that collateral estoppel applies to his prior conviction because: (1) Plaintiff was not a party to the criminal action; (2) his conviction is on appeal; and (3) he was convicted of "theft" not "larceny."

**B. Section 523(a)(4) and Collateral Estoppel**

█ A claim for nondischargeability under Section 523(a)(4) may rest on proof of larceny or embezzlement, without requiring proof of a fiduciary relationship. *In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988). In other words, Section 523(a)(4) states three separate grounds for nondischargeability: (1) a claim for fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement, and (3) larceny. Plaintiff's claim of larceny is sufficient to satisfy Sec-

tion 523(a)(4) and, therefore, Defendant's Motion must be denied.

■■■ In determining the Cross Motion, the Court must consider whether Defendant's prior criminal conviction is sufficient to establish her claim of larceny. In a nondischargeability action under Section 523, the bankruptcy court makes the determination as to whether a particular debt is dischargeable. In making this determination, however, the doctrine of collateral estoppel may be invoked to bar relitigation of factual issues underlying the determination. *In re Wallace,* 840 F.2d 762 (10th Cir.1988). Collateral estoppel precludes relitigation of factual issues if:

(1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*Id.* at 765.

### 1. Mutuality of the Parties

■■■ The Defendant argues that the Court cannot give preclusive effect to his criminal conviction because Plaintiff was not a party to the criminal action. In Colorado and the Tenth Circuit, however, the requirement of strict mutuality of parties has been abolished. The evolution of the mutuality requirement in the use of collateral estoppel is detailed in *Glosser v. Posner (In re Ivan F. Boesky Securities Litigation),* 848 F.Supp. 1119, 1122–23 (S.D.N.Y.1994):

Until relatively recently, the use of collateral estoppel was limited by the requirement of "mutuality," whereby neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the prior judgment. *See Parklane Hosiery [v. Shore],* 439 U.S. [322] at 326, 99 S.Ct.

[645] at 649[, 58 L.Ed.2d 552 (1979)] (describing end of mutuality limitation); 10 Louis Loss & Joel Seligman, *Securities Regulation* 4757 (3d ed.1993) (recounting how "the mutuality dam burst"). Moreover, even after the mutuality requirement was abolished, a distinction was made between *defensive* and *offensive* use of collateral estoppel. Defensive use of collateral estoppel precludes a plaintiff, who has lost in a prior action, from relitigating issues by merely naming a new adversary. Offensive use of collateral estoppel permits a plaintiff, who was not party to the prior action, to estop a defendant from relitigating issues which the defendant litigated and lost in the prior action.

The Tenth Circuit has permitted the use of offensive non-mutual collateral estoppel. *See State Farm Fire & Casualty Co. v. Mhoon,* 31 F.3d 979, 985–86 (10th Cir.1994)(observing that New Mexico jurisprudence, *like federal law,* approves the use of non-mutual offensive collateral estoppel and that a jury in a prior criminal case had already determined defendant's actions to be intentional). Colorado courts also allow the use of collateral estoppel without requiring strict mutuality of parties. *See Antelope Co. v. Mobil Rocky Mountain, Inc.,* 51 P.3d 995, 1003 (Colo.App.2001)(employing offensive use of nonmutual collateral estoppel); *Central Bank of Denver v. Mehaffy,* 940 P.2d 1097 (Colo.App.1997)(discussing application of defensive and offensive use of nonmutual collateral estoppel, and applying defensive nonmutual collateral estoppel).

■■■ In the present case, Plaintiff seeks to employ collateral estoppel against the Defendant offensively. This use of collateral estoppel is not prohibited in this jurisdiction. Nor does its use in this particular case offend the requirements of due process. The Defendant has already had a

full and fair opportunity in the criminal action to litigate the factual issues raised in this case. Since the prior litigation was a criminal proceeding and the potential jail sentence was substantial, the Defendant had sufficient motivation to defend the prior action.

### 2. Finality of the Prior Judgment

█ Defendant argues that the Court cannot give preclusive effect to his criminal conviction because it is on appeal. Plaintiff asserts that an otherwise final judgment is effective for purposes of collateral estoppel, even if it is on appeal. The clear weight of authority supports Plaintiff's position.

█ Under federal law, the pendency of an appeal does not alter the finality of a judgment for purposes of collateral estoppel or res judicata, unless the appeal removes the entire case to the appellate court and constitutes a proceeding *de novo. See, e.g., Ruyle v. Continental Oil Co.*, 44 F.3d 837, 846 (10th Cir.1994); *Bui v. IBP, Inc.*, 205 F.Supp.2d 1181, 1189 (D.Kan.2002). Although the Colorado Supreme Court has not expressly ruled on the issue, the Colorado Court of Appeals has adopted the same rule as the federal courts. *Miller v. Lunnon*, 703 P.2d 640, 643 (Colo.App.1985). The *Miller* Court relied, in part, on an earlier decision in an administrative appeal in *Jefferson County School Dist. No. R–1 v. Indus. Comm'n*, 698 P.2d 1350 (Colo.App.1984), which, in looking at the collateral estoppel effect of a judgment before an administrative proceeding, held:

> The law on this subject is not uniform in other jurisdictions, but we believe that the better rule has been adopted by the federal courts. Under this rule it is presumed that, even though pending appeal, a decision rendered by a competent tribunal is correct. *Kurek v. Pleasure*

*Driveway & Park District*, 557 F.2d 580 (7th Cir.1977); *United States v. Abatti*, 463 F.Supp. 596 (S.D.Cal.1978); *Rust v. First National Bank*, 466 F.Supp. 135 (D.Wyo.1979); *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (5th Cir.1971). Some states also follow this principle. *See also Restatement (Second) of Judgments* § 13 comments f and g (1982). We adopt this rule and hold that the pendency of a review proceeding does not suspend the operation of an otherwise final administrative action unless the review removes the entire case to the appellate court for *de novo* consideration or is suspended by a supersedeas order.

698 P.2d at 1352–53 (citation omitted). The court reached the same result in *Bunnett v. Smallwood*, 768 P.2d 736, 740 (Colo. App.1988), *rev'd in part by*, 793 P.2d 157 (Colo.1990), stating:

> [W]e reject Bunnett/Smallwood's contention that, because of the pendency of the appeal from the judgment entered in the Bunnett case, that judgment was not final for collateral estoppel purposes. Application of the principle adopted in *Miller v. Lunnon*, 703 P.2d 640 (Colo.App.1985)(pending appeal does not preclude application of doctrine of res judicata) and *Jefferson County School District No. R–1 v. Industrial Commission*, 698 P.2d 1350 (Colo.App.1984)(pending appeal of prior administrative ruling does not prevent application of the doctrine of collateral estoppel in subsequent administrative proceedings) is dispositive of this contention.

The fact that the judgment on appeal arises from a criminal conviction does not give rise to an exception to this general rule. In *Blair v. All Stars Sports Cabaret*, 87 F.Supp.2d 1133, 1135 (D.Colo.2000), the court held that the "pendency of an appeal

of a criminal conviction does not deprive a party of the right to invoke collateral estoppel in a civil proceeding unless or until that conviction is reversed on appeal." *See also Webb v. Voirol*, 773 F.2d 208, 211 (8th Cir.1985); *United States v. Intern'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir.1990); *Smith v. S.E.C.* 129 F.3d 356, 363 n. 7 (6th Cir.1997)(in res judicata context). See also *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir.1993) (citing *Intern'l Bhd. Teamsters* for this principle); *S.E.C. v. O'Hagan*, 901 F.Supp. 1461, 1465 (D.Minn.1995); *S.E.C. v. Pace*, 173 F.Supp.2d 30, 33 (D.D.C.2001); *Shaffer v. Smith* 543 Pa. 526, 673 A.2d 872 (1996); *New York v. Sokol (In re Sokol)*, 170 B.R. 556 (Bankr.S.D.N.Y.1994); *United States v. Aiello (In re Aiello)*, 1996 WL 585308 (Bankr.E.D.Cal.1996); *Flatau v. Stewart (In re Stewart)*, 186 B.R. 322 (Bankr. M.D.Ga.1995); *State of New York v. Kelly (In re Kelly)*, 155 B.R. 75 (Bankr.S.D.N.Y. 1993); *State Farm Fire & Casualty Co. v. Dunn (In re Dunn)*, 95 B.R. 414 (Bankr. N.D.Miss.1988).

### 3. Same Issue was Actually Litigated & Necessary to Resulting Judgment

■ Defendant contends that the issues in his prior criminal case were substantially different from the issues in this case. In the criminal action, he was charged with the felony crime of theft. In this action, Plaintiff seeks a judgment of nondischargeability on the basis of larceny. Defendant argues that theft is a statutory crime and larceny is a common law offense. This distinction, however, is insufficient to take this matter outside the reach of collateral estoppel. The Court must compare the two offenses to determine whether they are sufficiently similar to support a finding that the same issue was actually litigated and necessarily decided in the criminal action.

Defendant was convicted of theft, based on his taking of Plaintiff's money. Colo. Rev.Stat. § 18–4–401(1)(a) & (b) provides that:

A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and: (a) intends to deprive the other person permanently of the use or benefit of the thing of value; or (b) knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit. . . .

Jury Instruction No. 12 issued in Defendant's criminal action instructed the jury as follows:

The elements of the crime of Theft as charged are:

(1) That the Defendant, Michael Robert Lynch,

(2) in the City and County of Denver, State of Colorado, between and including September 1, 1998 and June 5, 2000,

(3) knowingly,

   (a) obtained or exercised control over,

   (b) anything of value, to wit: money,

   (c) which was the property of Everald Grace Nichols,

   (d) without authorization, or by deception, and either

   (i) with intent to permanently deprive Everald Grace Nichols, of the use or benefit of the thing of value, or

   (ii) knowingly used or concealed the thing of value in such manner as to deprive Everald Grace Nichols permanently of it's [sic] use or benefit, and

(4) the value of the thing involved is fifteen thousand dollars or more.

The jury in the criminal action found him guilty of this count of theft of Plaintiff's money beyond a reasonable doubt. He received a sentence of fourteen years attributable to this count and was ordered to pay restitution in the amount of $160,989.26.

▇▇▇ Section 523(a)(4) does not employ the term "theft," but instead excepts from discharge debts arising from "larceny." Larceny is not defined in the Bankruptcy Code itself. A bankruptcy court is not bound by the state law definition of larceny, but, rather, should follow the federal common law definition. *In re Langworthy*, 121 B.R. 903 (Bankr.M.D.Fla.1990); *In re Barrett*, 156 B.R. 529, 533 n. 3 (Bankr.N.D.Tex.1993), *aff'd* 1999 WL 184117 (N.D.Tex.1999); *In re Sokol*, 170 B.R. 556, 560 (Bankr.S.D.N.Y.1994), *aff'd* 181 B.R. 27 (S.D.N.Y.1995). Under this common law definition, larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *In re Langworthy*, 121 B.R. at 907; *In re Barrett*, 156 B.R. at 533. Superficially and instinctively, it appears that a conviction of theft under Colorado's statute should support a finding of nondischargeability for larceny.

The complicating factor is that many federal courts define "larceny" as the "fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Shinew*, 33 B.R. 588, 592 (Bankr. N.D.Ohio 1983). Or stated in another way, "[l]arceny is proven, for nondischargeability purposes, by a showing that the debtor has willfully taken property with fraudulent intent." *In re Kelly*, 155 B.R. 75, 78 (Bankr.S.D.N.Y.1993). Similarly, the courts refer to fraudulent intent or fraudulent appropriation when defining embezzlement as well. *In re Wallace*, 840 F.2d 762,

765 (10th Cir.1988). The courts define embezzlement and larceny as having the same elements, with the one distinction that, with larceny, the original taking and possession of property was unlawful rather than authorized. *In re Tague*, 137 B.R. 495, 500 (Bankr.D.Colo.1991).

The use of the word "fraudulent" in these definitions is problematic. At least one court has focused on the use of "fraudulent" and concluded that only misappropriations of property that are accompanied by deception or intentional misrepresentation give rise to a finding of nondischargeability on the grounds of larceny or embezzlement. *Id.* at 500–01. In pertinent part, the Colorado theft statute covers an act of obtaining or exercising control over valuable property of another "without authorization *or* by deception." The use of the disjunctive form in the statute and the jury instruction means that a jury verdict that finds a defendant guilty of theft, without more, arguably does not *necessarily* include a finding of "deception" or "fraudulent" intent or appropriation. Under this narrow interpretation, a person who steals from another, but does not make intentional misrepresentations or engage in acts of deception in the process of stealing, may discharge the debt. It would only be the cunning thief that faces nondischargeability.

Some courts define larceny as including "fraudulent intent," but then give collateral estoppel effect to a criminal conviction for theft without analyzing this issue. *See, e.g., In re Kelly*, 155 B.R. 75, 78 (Bankr. S.D.N.Y.1993). Some courts find that larceny requires a finding of fraudulent intent, but nevertheless find that theft is an act of conversion nondischargeable under Section 523(a)(6). *See, e.g., In re Tague*, 137 B.R. at 501–02. An alternative basis for nondischargeability might also appear under Section 523(a)(7) because a restitu-

tion order entered in connection with a criminal conviction may itself be nondischargeable. In the present case, this Court cannot avoid this issue by resort to Section 523(a)(6) or (a)(7) because Plaintiff, despite prior leave to amend her Complaint, failed to plead a claim under either 523(a)(6) or (7), and pled a claim only under Section 523(a)(4).

This Court is not satisfied with a narrow interpretation of "larceny" that requires evidence of "fraudulent" intent. Section 523(a)(2) already provides an exception to dischargeability based on various forms of fraud, including obtaining money or property by false pretenses. This literal application of the use of "fraudulent" in the definition of larceny would render its inclusion in Section 523(a)(4) superfluous.

A number of courts refer to the federal common law definition of larceny as the "felonious" taking of property, while others refer to "fraudulent" taking. The source of this much referred to "federal common law definition" remains illusive. The common law of "larceny" has evolved over the centuries. Until many states adopted consolidated theft statutes, that include the various forms of larceny, the common law definition included six basic elements:

a. the caption (or capture)
b. the asportation (or taking away)
c. of personal property
d. of another
e. of some value
f. the "animus furandi" (or intention to steal).

Charles E. Moylan, *The Common Law Background of Consolidated Theft*, THE MARYLAND INSTITUTE FOR CONTINUING PROFESSIONAL EDUCATION OF LAWYERS, INC., 2002; John W. Bartram, *Pleading for Theft Consolidation in Virginia: Larceny, Embezzlement, False Pretenses and*

§ 19.2–284, 56 WASH. & LEE L.REV. 249, 258–59 (1999); LaFave & Scott, CRIMINAL LAW 706 (2d ed.1986); Rollin M. Perkins, CRIMINAL LAW 234 (2d ed.1969); 3 Torcia, WHARTON'S CRIMINAL LAW § 342, at 347 (15th ed.1995). C.J.S. defines common law larceny as "the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner." 52A C.J.S. *Larceny* § 1(1) (1968). At common law, it was necessary to distinguish between a mere breach of promise to return property and "animus furandi" or intent to steal.

In the very early stages of the metamorphosis of larceny, scholars struggled to rationalize the inclusion of acts of deception in the definition of larceny. For example, in the famous case of *The King v. Pear*, Pear had rented a horse from Finch, stating that he would ride the horse to Surrey. In fact, he rode to Smithfield and sold the horse. It turned out he had also lied about his place of residence. Prior to this time, larceny had been defined as the taking from another without consent, but in the *Pear* case the owner had given consent to the original transfer of possession. The judge instructed the jury that if Pear had mounted the horse with the intention of selling it, then he was guilty of larceny. Pear's conviction generated substantial controversy. The *Pear* case became a major step in the transition from requiring objective criminality to also allowing a pattern of larceny by intent, holding that fraud or deception could defeat the "consent" to transfer of possession by the owner. George P. Fletcher, *The Metamorphosis of Larceny*, 89 HARV. L. REV. 469 (1976). The extension of larceny to

also cover larceny by trick, may be the genesis of the use of "fraudulent" in the definition. This Court cannot ascertain, however, any reason or stated intention in the federal common law to then exclude from the definition of larceny, all forms of larceny, except larceny by trick. Absent a controlling Tenth Circuit precedent that expressly holds that the use of "fraudulent" in the federal common law definition of larceny requires a finding of deception or a fraudulent misrepresentation, this Court finds that the requisite mental state required to establish a claim for larceny is "animus furandi" or intention to steal.

In this case, the Defendant's criminal conviction for theft rested upon a finding of a taking from Plaintiff "without authorization or by deception" and either "with intent to permanently deprive" her of her property or that Defendant "knowingly used or concealed the thing . . . in such manner as to deprive" her of it. A conviction resting on this finding is sufficient to satisfy the element of an intent to steal, such that all of the necessary elements of "larceny" are present. Thus, the Court finds that the same issues involved in a claim of larceny were actually litigated in the criminal action and were necessary to the actual judgment of conviction. As a result, all of the necessary elements are present to cause this Court to give preclusive effect to the criminal conviction in this nondischargeability case. Accordingly, the Court finds that Plaintiff's claim of "larceny," satisfies the requirements of Section 523(a)(4).

## C. Conclusion

For the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Cross Motion, and enters a judgment of non-dischargeability in favor of Plaintiff and against Defendant, based on a debt arising from larceny under 11 U.S.C. § 523(a)(4), in the amount of $160,989.26.