**IN RE Saeid GHAEMI, Debtor(s).**

**Alternity Capital Offering 2, LLC, and Alternity Capital Offering 4, LLC, Plaintiff(s),**

**v.**

**Saeid Ghaemi, Defendant(s).**

**Bankruptcy Case No. 12–29295 EEB
Adversary Proceeding No. 12–1783 EEB**

United States Bankruptcy
Court, D. Colorado

May 22, 2013

Jennifer K. Fischer, Denver, CO, for Plaintiffs.

Jenny M.F. Fujii, Denver, CO, for Defendant.

## ORDER DENYING MOTION TO DISMISS

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the "Motion to Dismiss Complaint With Regard to the First and Second Claims for Relief of Alternity Capital 2, LLC and the First Claim for Relief as to Alternity Capital 4, LLC" (the "Motion"), filed by Debtor, and Plaintiffs' Response. The Court having reviewed the file and being further advised in the premises, hereby FINDS and CONCLUDES:

## I. APPLICABLE STANDARD

Debtor's Motion alleges various deficiencies in the Plaintiffs' Complaint and argues

that dismissal of the first and second claims is appropriate under Fed.R.Civ.P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr.P. 7012. In reviewing a motion to dismiss, the Court must accept all well-pled factual allegations in the complaint as true and construe the complaint in favor of the plaintiff. *Ash Creek Mining v. Lujan,* 969 F.2d 868, 870 (10th Cir.1992). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Duran v. Carris,* 238 F.3d 1268 (10th Cir.2001) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Plausible" does not mean "probable," and the court must still accept alleged facts as true, but the pleading must assert "more than a sheer possibility that a defendant has acted unlawfully." *Id.* It must be remembered, however, that the requirements of "plausibility" and "fair notice," neither invalidate Rule 8's "short and plain statement" rule nor impose a heightened fact pleading standard. *See Twombly,* 550 U.S. at 570, 127 S.Ct. 1955 ("[W]e do not require heightened fact pleading of specifics...."). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts

is improbable and that recovery is very remote and unlikely." *Id.* at 556, 127 S.Ct. 1955 (quotations omitted). The critical question is, "assum[ing] the truth of all well-pleaded facts ... and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint " 'raise[s] a right to relief above the speculative level.' " *Dias v. City & County of Denver,* 567 F.3d 1169, 1178 (10th Cir.2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

## II. DISCUSSION

Taking the allegations of the Amended Complaint as true, Debtor owns and controls Econo Auto Sales, Inc. ("Econo"), which is in the business of selling used cars. Plaintiffs are in the business of buying consumer vehicle installment sales contracts. Prior to the petition date, Plaintiffs and Econo entered into two agreements pursuant to which Plaintiffs purchased certain vehicle contracts from Econo. Under the agreements with Plaintiffs, Debtor and Econo were to deliver any payments they received from borrowers on the underlying vehicle contracts to Plaintiffs. Plaintiffs allege that Debtor and Econo collected loan payments and other monies ("Monies") from borrowers but failed to remit those Monies to Plaintiffs. This debt, Plaintiffs argue, is nondischargeable under §§ 523(a)(4) and (a)(6).

### A. Larceny Under § 523(a)(4)

The Plaintiffs' first claim for relief under § 523(a)(4) alleges that Debtor obtained the Monies by means of "embezzlement and/or larceny." Amd. Comp. at ¶ 20. Section 523(a)(4) provides that a debtor is not discharged from "any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Nondis-

chargeability under § 523(a)(4) may rest on proof of embezzlement or larceny without requiring proof of a fiduciary relationship. *See Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988). Larceny requires proof that there was an "unlawful taking and carrying away of someone else's personal property with the intent to deprive the possessor of it permanently." *J & M Constr. v. Musgrave (In re Musgrave)*, 2011 WL 312883, at *5 (10th Cir. BAP Feb. 2, 2011) (quoting Black's Law Dictionary 885 (7th ed. 1999)).

■ Debtor argues that Plaintiffs' larceny claim fails because the Amended Complaint fails to allege that Debtor unlawfully took property or that Debtor acted with fraudulent intent. The Complaint, however, alleges that Debtor took the Monies "without authorization." Amd. Comp. at ¶ 21. It is the taking of property without the owner's authorization that makes a taking "unlawful" for purposes of a larceny claim. Plaintiff need not use the term "unlawful" in order to adequately plead such a taking. The Court concludes that the Amended Complaint sufficiently pleads an unlawful taking of property.

■ As to intent, this Court has previously held that larceny requires that a debtor act with intention to steal. *Bryant v. Lynch (In re Lynch)*, 315 B.R. 173, 181 (Bankr.D.Colo.2004). As explained in *Lynch*, many federal courts refer to "fraudulent" intent or "fraudulent" appropriation when defining larceny. *Id.* at 179 (citing cases). Nevertheless, a review of the common law shows the intent element for larceny to be *"animus furandi"* or intention to steal. *Id.* at 180. This is not the same as the fraudulent intent necessary to prove a claim under § 523(a)(2). *Id.* Thus, to adequately plead larceny, the Plaintiffs need not include the word "fraudulent," so long as the Amended Complaint pleads an intention to steal.

The Complaint does that by alleging that Debtor intended to deprive the Plaintiffs permanently of the use of the Monies. Amd. Comp. at ¶ 23. Therefore, the Amended Complaint pleads a plausible claim for larceny.

## B. Embezzlement Under § 523(a)(4)

■ Debtor next alleges deficiencies in Plaintiffs' embezzlement claim. Larceny and embezzlement claims under § 523(a)(4) have similar elements. The main difference between them is that with embezzlement, the debtor initially acquires the property lawfully, whereas larceny requires that the funds originally come into the debtor's hands unlawfully. *Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876 (Bankr.D.Colo. 2004). An embezzlement claim under § 523(a)(4) has five elements: "1. Entrustment (property lawfully obtained originally); 2. Of property; 3. Of another; 4. That is misappropriated (used or consumed for a purpose other than that for which it was entrusted); 5. With fraudulent intent." *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789 (Bankr.D.Colo.2002). Embezzlement "requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir.1986).

■ Debtor argues Plaintiffs have failed to adequately plead two of these elements. First, Debtor contends the Amended Complaint fails to allege that Debtor used the Monies for a purpose other than that for which they were entrusted. However, the Amended Complaint alleges that Debtor was required to turnover any payments he received from borrowers on loan contracts purchased by Plaintiffs. While he did collect the Monies, he failed to turn them over and instead kept the Monies. Amd. Comp. at ¶ 16–17. This sufficiently alleges

that Debtor was entrusted with Monies meant for Plaintiffs but he instead used them for a different purpose.

Debtor also alleges that Plaintiffs have failed to plead the fifth element of embezzlement, fraudulent intent. It is true that the Amended Complaint does not contain the phrase "fraudulent intent," but that omission is not fatal to Plaintiffs' embezzlement claim. Although courts, including this Court, often describe the intent requirement for embezzlement as "fraudulent intent," as indicated above, it is more accurately described as *"animus furandi"* or intention to steal. To understand this distinction, one must look at the historical development of embezzlement. Unlike larceny, embezzlement was not a common law crime. 3 Charles E. Torcia, *Wharton's Criminal Law* § 383 (15th ed. 1993). It was created by statute in order to fill a gap then existing in the common law governing larceny. *Id.* Larceny required a trespassory taking. *Id.* As a result, if an individual initially acquired possession of property lawfully and later misappropriated it, he could not be guilty of larceny because there was no initial trespass. Embezzlement statutes were passed in England to address this situation. *Id.* American states generally followed the English pattern. *Id.*

Historically, both larceny and embezzlement have consistently had a criminal intent requirement. *See Morissette v. United States*, 342 U.S. 246, 261, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (noting courts have "consistently retained the requirement of intent in larceny-type offenses."). Courts have described the intent requirement in various ways, such as "fraudulent or unlawful intent," *Moody v. People*, 65 Colo. 339, 176 P. 476, 476 (1918), or "fraudulent intent to deprive the owner of the property," *People v. Fielden*, 162 Colo. 574, 427 P.2d 880 (1967). These descriptions distin-

guish embezzlement from simple conversion, which historically did not have a criminal intent requirement and usually resulted in only civil liability. *See Lewis v. People*, 99 Colo. 102, 60 P.2d 1089, 1096 (1936) ("[A] voluntary taking, amounting to a conversion, does not carry with it necessarily an inference of criminal intent, which is essential to constitute an embezzlement."); *Morissette*, 342 U.S. at 270–72, 72 S.Ct. 240 (discussing historical differences between conversion, larceny and embezzlement). The Supreme Court described the distinction as follows: "[t]o steal means to take away from one in lawful possession without right with the intention to keep wrongfully[,]" but conversion "may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful." *Morissette*, 342 U.S. at 271–72, 72 S.Ct. 240. As described by another court, "[t]he crime of embezzlement builds on the concept of conversion but adds two further elements." *United States v. Stockton*, 788 F.2d 210, 216 (4th Cir.1986). Those additional elements are: (1) that the defendant initially acquired possession of the property lawfully, and (2) the defendant had "knowledge that the appropriation is contrary to the wishes of the owner of the property," or in other words, that the defendant took another person's property "knowing that the other person would not have wanted that to be done." *Id.* at 216–17. "A defendant who exercises dominion over property in the good-faith belief that the property is his own, or that the appropriation is otherwise authorized, is not guilty of embezzlement." *Id.* at 217.

Viewed in this context, the Court does not construe the Tenth Circuit's instruction that embezzlement requires "fraud in fact, involving moral turpitude or intentional wrong" as imposing an intent re-

quirement different from that recognized at common law. *See Driggs v. Black (In re Black),* 787 F.2d 503, 507 (10th Cir. 1986). Rather, it reinforces the principle that conversion alone is not enough to establish embezzlement. Conversion only requires a specific intent to appropriate property. *See Stockton,* 788 F.2d at 216. Embezzlement, however, requires more than that, it requires proof of "intent to permanently deprive." 3 Charles E. Torcia, *Wharton's Criminal Law* § 385 (15th ed. 1993); *see also Morissette,* 342 U.S. at 271–72, 72 S.Ct. 240; *Stockton,* 788 F.2d at 216. As one court put it, "[o]ne cannot honestly embezzle any more than he can honestly steal." *Moody,* 176 P. at 476.

Some courts read the phrase "fraudulent intent" to mean an embezzlement claim requires proof of a misappropriation of property accompanied by deception or intentional misrepresentation. *See In re Tague,* 137 B.R. 495, 500–01 (Bankr.D.Colo. 1991). This definition goes too far. Section 523(a)(2) already provides an exception to dischargeability based on various forms of fraud, including obtaining money or property by false pretenses. Importing such elements into an embezzlement claim would render § 523(a)(4) superfluous. Accordingly, this Court finds that the requisite mental state required to establish a claim for embezzlement is *"animus furandi"* or intention to steal.

In this case, the Plaintiffs allege that Debtor acted with intent to permanently deprive Plaintiffs of the Monies. Amd. Complaint at ¶ 23. This sufficiently alleges an intention to steal and, as such, the Court finds that the Amended Complaint pleads a plausible claim for embezzlement.

## C. Allegations Concerning Both Plaintiffs

Debtor also seeks dismissal of both the first and second claims on the basis that the Amended Complaint contains allegations about property belonging to Alternity Capital 4, but none concerning property of Alternity Capital 2. However, the Amended Complaint alleges that both Plaintiffs purchased "Contracts" from Econo in 2011. Amd. Comp. ¶ 11. It further alleges that Econo and Debtor were obligated to turnover payments they received under these Contracts to Plaintiffs, and that he failed to do so. Amd. Comp. ¶ 16–17. These allegations plainly refer to property belonging to both Plaintiffs.

## III. CONCLUSION

For the reasons stated above, the Debtor's Motion to Dismiss is DENIED.