**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1349**

---

In re: DAVID ANDREW LEVINE; MONICA LARSON LEVINE,

Debtors.

------------------------------

THOMAS M. FLUHARTY, Trustee of the Bankruptcy Estate of David Levine and Monica Levine; MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.,

Plaintiffs – Appellants,

v.

PHILADELPHIA INDEMNITY COMPANY; DAVID A. LEVINE,

Defendants – Appellees.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Gina M. Groh, District Judge.  (3:22-cv-00050-GMG)

---

Argued:  September 25, 2024                      Decided:  February 26, 2025

---

Before KING, BENJAMIN, and BERNER, Circuit Judges.

---

Affirmed by published opinion.  Judge Benjamin wrote the opinion in which Judge King and Judge Berner joined.

---

**ARGUED:**  Patrick S. Cassidy, CASSIDY LAW, PLLC, Wheeling, West Virginia, for Appellants.  David Edward Grassmick, COPE ELHERS PC, Chicago, Illinois for Appellee Philadelphia Indemnity Insurance Company.  **ON BRIEF:**  Timothy F. Cogan, COGAN LAW OFFICE, PLLC, Wheeling, West Virginia; Martin P. Sheehan, SHEEHAN & ASSOCIATES, PLLC, Wheeling, West Virginia, for Appellants.  Debra Tedeschi Varner, VARNER & VAN VOLKENBURG PLLC, Clarksburg, West Virginia, for Appellee Philadelphia Indemnity Insurance Company.

---

DEANDREA GIST BENJAMIN, Circuit Judge:

Appellants Thomas Fluharty, Trustee of the Bankruptcy Estate of David and Monica Levine ("Levine Trustee"), and Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc. ("Geostellar Trustee," together "Trustees"), appeal the district court's dismissal of their adversary proceeding for declaratory judgment against appellee Philadelphia Indemnity Company ("Insurer"). We affirm.[1]

## I.

This is a tale of two bankruptcies and two adversary actions. Geostellar Inc. filed for bankruptcy and subsequently brought an adversary action ("Geostellar Adversary Action") against its former CEO David Levine, accusing him of defrauding and bankrupting the company. Before the Geostellar Adversary Action began, Geostellar had purchased a directors and officers policy ("Policy") from Insurer. Levine sought and Insurer began to provide a defense under the Policy. The Policy is a declining balance or "wasting" policy, meaning that, as Insurer pays defense costs, those costs are deducted from the $3 million coverage limit.

Later, Levine and his wife filed for personal bankruptcy. The start of Levine's bankruptcy proceedings automatically stayed the Geostellar Adversary Action pursuant to 11 U.S.C. § 362(b). To continue prosecuting the Geostellar Adversary Action, the

---

[1] After oral argument, the Trustees moved to modify the record (ECF No. 37) and we grant the motion.

Geostellar Trustee moved the Levine bankruptcy court to lift § 362(b)'s automatic stay. In his motion, the Geostellar Trustee admitted that because Geostellar had not objected to Levine's discharge,[2] Levine's debt to Geostellar was uncollectable. In other words, the Geostellar Trustee admitted "Mr. Levine ha[d] no personal interest in the [Geostellar Adversary Action] against him beyond any available insurance coverage." *See* J.A. 1270. The Geostellar Trustee therefore moved to lift the stay "to proceed to the extent of insurance" only. *Id.* The court granted the motion.

In the summer of 2021, while mediating the Geostellar Adversary Action, Insurer told the Geostellar Trustee that, under the Policy, Levine's consent was needed to settle. The Geostellar Trustee disagreed, contending that the Levine Trustee's consent was needed, not Levine's. To vindicate that position, the Trustees filed the instant adversary action for declaratory judgment. Trustees "seek a declaratory judgment that the right to settlement under the [P]olicy . . . issued by [Insurer] . . . is an asset of the Bankruptcy Estate of David and Monica Levine for which [the Levine Trustee] is the exclusive representative." J.A. 17. The bankruptcy court granted Insurer's motion to dismiss, and the district court affirmed, explaining in detail why each Trustee lacked standing to sue Insurer. This appeal ensued, and we have jurisdiction. 28 U.S.C. § 1291.

---

[2] "A discharge in bankruptcy 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.' " *Hirschkop & Assocs., P.C. v. Ferry (In re Ferry)*, No. 97-2220, 1998 U.S. App. LEXIS 26861, at *8 (4th Cir. Oct. 20, 1998) (citing 11 U.S.C. § § 524(a)(2) and 727(b)); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("When a debtor's debts are discharged in bankruptcy, efforts to collect them are unlawful.").

4

II.

a.

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."  U.S. Const. art. III, § 2.  Thus, it is a jurisdictional requirement that a person challenging a government action be a party to a live case or controversy.  This standing requirement "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)).

To show standing, a party must establish, as "the irreducible constitutional minimum," three elements: (1) that it has suffered an injury in fact that is both concrete and particularized and "actual or imminent, not conjectural or hypothetical"; (2) that there is a "causal connection" between the injury and the conduct complained of, meaning the injury is "fairly . . . trace[able] to the challenged action"; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."  *Id.* at 560–61 (internal quotation marks and citations omitted); *Burke v. City of Charleston,* 139 F.3d 401, 405 (4th Cir. 1998).  At issue here is whether either Trustee suffered an injury in fact.

b.

We review a district court's dismissal for lack of standing de novo.  *E.g., Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).

The district court correctly determined the Geostellar Trustee has no standing to sue Insurer.  West Virginia law applies because Geostellar is a West Virginia-based entity and

5

Insurer issued the Policy to insure risk located primarily in West Virginia. *See Lee v. Saliga*, 373 S.E.2d 345, 348 (W. Va. 1988). Under West Virginia law, an injured plaintiff like the Geostellar Trustee can bring a direct action against a liability carrier like Insurer where (1) there is a verdict against an insured (which would be Levine) that an insurer refuses to pay or (2) a defendant's insurer has denied coverage and a plaintiff asks the court to "determine if there is policy coverage" for the accident. *Robinson v. Cabell Huntington Hosp., Inc.*, 498 S.E.2d 27, 32 (W. Va. 1997).[3] The Geostellar Adversary Action is ongoing, and Insurer is providing Levine a defense under the Policy. Thus, West Virginia law does not permit the Geostellar Trustee to sue Insurer for a declaration that either he or the Levine Trustee has consent rights to settle under the Policy.

The Geostellar Trustee resists this conclusion by arguing that because Geostellar *bought* the Policy, and the Geostellar Trustee extended it, the Geostellar Trustee has first-party status. The Geostellar Trustee relies on *Loudin v. National Liability & Fire Insurance Co.*, 716 S.E.2d 696 (W. Va. 2011), for this position. That case, however, is inapposite. In *Loudin*, the Supreme Court of Appeals of West Virginia permitted an automobile policy's named insured to bring a bad faith claim against his liability carrier for failure to pay benefits for injuries a permissive driver's negligence caused. 716 S.E.2d at 703. The Policy's language, however, distinguishes this case from *Loudin*.

---

[3] A party may also join, "in the same complaint as the underlying personal injury suit against the insured," an "action against an insurer for bad faith and unfair settlement practices." *Robinson v. Cabell Huntington Hosp.*, 498 S.E.2d 27, 32 (W. Va. 1997). This third exception is irrelevant because neither Trustee alleges a bad faith claim against Insurer.

6

Under the Policy, Insurer pays relevant benefits in three circumstances. First, if a director or officer is *sued*, the Policy provides direct coverage to *that* individual for judgments and settlements in connection with a covered claim, as well as defense costs, but only if Geostellar has not indemnified the director or officer. Second, if Geostellar *pays* a judgment or settlement pursuant to a lawsuit against an officer or director for a covered claim, the Policy provides Insurer will reimburse Geostellar those costs. Last, if Geostellar *itself* is sued, then the Policy covers judgments and settlements in connection with covered claims and related litigation costs. The Policy is activated because Geostellar *sued Levine* and in such a situation, under the Policy, only Levine is an insured, not Geostellar. J.A. 62, 69–70. Thus, unlike the plaintiff in *Loudin*, Geostellar has no claim to first-party status.

The Geostellar Trustee's "real concern is that payment of defense costs may affect his rights as a plaintiff seeking to *recover from* the [directors and officers policy] rather than as a potential defendant seeking to be *protected by* the [directors and officers policy]." *See, e.g.*, *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004). This fear does not establish standing.

c.

The district court also correctly held that the Levine Trustee had no standing to sue Insurer. The Levine bankruptcy court lifted the automatic stay of the Geostellar Adversary Action *only* to the extent of the Policy's coverage limits. Further, when the Geostellar Trustee moved to have the Levine bankruptcy court lift the stay on the Geostellar Adversary Action, he admitted Geostellar's claim against Levine had been discharged and

7

"Mr. Levine ha[d] *no personal interest in the litigation against him* beyond any available insurance coverage." *See* J.A. 1270 (emphasis added). Accordingly, because any Geostellar judgment against Levine cannot exceed "the extent of insurance," and because Levine's debt to Geostellar is otherwise discharged and uncollectable, a judgment in the Geostellar Adversary Action poses no threat to the Levine Bankruptcy Estate. Put simply, the outcome of the Geostellar Adversary Action will not impact the Levine Bankruptcy Estate in any way. So, the Levine Trustee has failed to establish an injury in fact, and he lacks standing to sue Insurer.

d.

In a last-ditch effort to manufacture standing, the Levine Trustee points to 11 U.S.C. § 541(a)(1). Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of this definition is broad and is intended to include "all kinds of property, including tangible or intangible property." *In re Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007). Insurance policies qualify as property of the estate. *See, e.g.*, *In re Beach First Nat., Inc.*, 451 B.R. 406, 409 (Bankr. D.S.C. 2011). That said, "[w]hether proceeds of a directors and officers liability policy are property of a debtor's bankruptcy estate should be analyzed in light of the facts of the particular case." *Id*.

Ordinarily, a dispute involving a directors and officers policy concerns a company that files for bankruptcy, and which sues its former officers and directors. In such cases, the officers and directors seek a defense and indemnification under the policy—usually a wasting policy—and the debtor company's trustee opposes coverage, arguing that because

8

the policy is part of the bankruptcy estate under § 541, the officers and directors are not entitled to defense costs or indemnification. *See, e.g.*, *In re Allied Digital Tech., Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). Interpreting policies identical to the one here, courts routinely find that "when the liability insurance policy only provides the direct coverage to the directors and officers[,] the proceeds are not property of the [debtor company's] estate." *See, e.g.*, *In re Allied Digital Tech., Corp.*,306 B.R. at 512; *In re Beach*, 451 B.R. at 410–11; *In re MF Global Holdings Ltd.*, 469 B.R. at 190; *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 671–72 (Bankr. N.D. Ohio 2005)  Thus Levine—not the Trustees—has an interest in the Policy's proceeds.

To displace this line of sound, practical reasoning, the Levine Trustee cites a single case, *Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009). In *In re Baird*, plaintiffs sued a doctor for medical malpractice. *Id.* at 1209. The doctor had purchased a malpractice liability insurance policy prior to the accident. *Id.* When the doctor filed for personal bankruptcy, the trustee and plaintiffs disagreed about whether the policy was part of the bankruptcy estate such that the trustee controlled the policy's right to consent to settlement. *Id.* at 1209–10. Applying Utah law, the court held that the policy had been assigned to the trustee and that the trustee acquired the doctor's right to consent. *Id.* at 1215.

The Levine Trustee's reliance on *In re Baird* is misplaced. This case does not involve an insurance policy that Levine bought for himself. Rather, Geostellar, Levine's former employer, purchased the Policy not only for Levine, but for itself and, as the Policy defines them, other "Individual Insureds." The nature of the Policy's coverage is to protect

9

Levine and similarly-situated employees from incurring liability *as directors or officers of Geostellar* and to ensure that potential losses incurred as the result of their service *in such capacities* remain separate from their personal finances. For these reasons, as noted above, courts regularly recognize that the benefits provided to directors and officers by directors and officers liability insurance coverage cannot be stripped from them by a bankruptcy trustee. *See, e.g., In re Allied* 306 B.R. at 512-513. *In re Baird* is inapposite and the Levine Trustee has no claim to the right to consent to settlement under the Policy.

## III.

Neither Trustee has standing to sue Insurer. The Policy covers Levine and the right to consent to settlement thereunder is neither the Geostellar Trustee nor the Levine Trustee's property.

The Trustees have shown no error. The district court's judgment is

*AFFIRMED.*

10