**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-2084**

———————

In re: DEBORAH FAYE PARKER,

      Debtor.

------------------------------

DAN G. MARTIN,

          Plaintiff – Appellant,

     v.

DEBORAH FAYE PARKER,

          Defendant – Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T.S. Ellis, III, Retired District Judge.  (1:22-cv-01388-TSE-LRV)

———————

Argued:  May 6, 2025                           Decided:  July 1, 2025

———————

Before WILKINSON, GREGORY, and BENJAMIN, Circuit Judges.

———————

Affirmed by published opinion.  Judge Benjamin wrote the opinion in which Judge Wilkinson and Judge Gregory joined.

———————

**ARGUED:**  Lori Dawn Thompson, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Appellant.  Robert Sergio Brandt, LAW OFFICE OF ROBERT S. BRANDT, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Brian H. Richardson, SPILMAN

THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Appellant.

USCA4 Appeal: 23-2084    Doc: 38    Filed: 07/01/2025    Pg: 2 of 12

DEANDREA GIST BENJAMIN, Circuit Judge:

In Virginia state court, Dan G. Martin prevailed against Deborah Faye Parker in an action for breach of contract. Instead of paying the judgment against her, Deborah filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code. Dan then initiated an adversary action against Deborah alleging that his judgment was nondischargeable. After trial, the bankruptcy court ruled that Dan's judgment against Deborah was nondischargeable under 11 U.S.C. § 523(a)(4)'s embezzlement exception. Deborah appealed to the district court, which reversed the bankruptcy court's embezzlement finding and entered judgment for Deborah. Dan then appealed the district court's judgment to this court. We now affirm.

I.

A.

The relevant facts are undisputed. Morton H. Poindexter, Jr., and Peggy L. Martin cohabitated for years without marrying. Morton is Deborah's father, and Peggy is Dan's mother. While living together, Morton and Peggy signed a contract that they called a "Post Marital Agreement" (the "Agreement"). J.A. 253.[1] Under the Agreement, Morton and Peggy promised to execute reciprocal wills, which they did. Each will provided that, if the testator were to die first, his or her entire estate would pass to the surviving party. Each will further provided that, upon the surviving party's death, two-thirds of the combined

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

3

estate would go to Dan and the remaining third to Deborah and her two brothers.  The Agreement also set limits on annual gift transfers to children during the surviving party's life.

Peggy died first, and her entire estate passed to Morton.  Morton proceeded to designate Deborah as a joint account holder on "all of his financial accounts," including a bank account, a life insurance policy, two annuities, and two certificates of deposit ("CDs").  *See id.* 76–77, 254.  Sometime later, Morton's health degraded, and he was hospitalized.

Around the time Morton died, Dan called Deborah and told her that there "was a legal agreement" that she "might want to read."  *Id.* 385.  Before this conversation, Deborah had never heard of the Agreement.  *See id.* 383–84.  Deborah then read Morton's will and discovered that, "exactly" as Dan had said, "two parts of everything" was Dan's.  *Id.* 385.

Reading Morton's will left Deborah "confused."  *Id.* 385.  So Deborah spoke with the bank and disclosed the existence of both Morton's will and the Agreement.  *Id.* 386.  The bank responded that Morton's designation of Deborah as a joint account holder superseded the Agreement.  *Id.* 386 (testifying that Deborah "talked to the bank and said, I've got a will and the post-marital [agreement,] and they basically said, sorry, he—gave you—you his money when he was alive, and [Morton's designating Deborah as a joint account holder] supersedes [the Agreement]"); *see also id.* 393–94 (testifying that, as part of "the global conversation she had" with the bank, Deborah discussed the CDs); *id.* 390 (testifying that, after speaking with the financial institution which issued the annuities, Deborah believed that these products belonged to her because she was "the beneficiary");

4

*id.* 391 (testifying that Deborah was the beneficiary on Morton's life insurance policy). Based on the above conversations, Deborah believed that she was entitled to the funds for which she was a joint account holder or beneficiary. Thus, at Morton's death, Deborah liquidated these accounts.

Soon after, Dan, individually and as Executor of Morton's estate, sued Deborah in Virginia state court. Dan alleged that Morton breached the Agreement by designating Deborah as "co-owner of his accounts." *Id.* 76. As a consequence, Dan further alleged that Deborah had acquired money to which he was legally entitled. In the alternative, Dan pursued an unjust enrichment claim.

Dan eventually prevailed against Deborah on his breach of contract claim and the state court entered judgment for Dan in the amount of $151,501.00. *Id.* 82, 84. Deborah noticed an appeal, but never pursued it on the merits, leaving the judgment intact. *See In re Parker*, 653 B.R. 765, 773 (E.D. Va. 2023).

B.

Deborah then filed a voluntary petition for bankruptcy under Chapter 7. In her schedules, Deborah listed Dan's judgment. In response, Dan instituted an adversary proceeding against Deborah alleging that his state court judgment was nondischargeable[2]

---

[2] "A discharge in bankruptcy 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.' " *In re Levine*, 130 F.4th 86, 88 n.2 (4th Cir. 2025) (quoting *Hirschkop & Assocs., P.C. v. Ferry (In re Ferry)*, No. 97-2220, 1998 WL 766731, at *3 (4th Cir. Oct. 20, 1998)).

under various provisions of the bankruptcy code: 11 U.S.C. § 523(a)(2)(A) (fraudulent misrepresentation or actual fraud); 11 U.S.C. § 523(a)(4) (fiduciary defalcation); 11 U.S.C. § 523(a)(4) (embezzlement and larceny); and 11 U.S.C. § 523(a)(6) (willful and malicious injury).  After trial, the bankruptcy court issued findings of fact and conclusions of law. The bankruptcy court ruled for Deborah on Dan's claims of fraudulent misrepresentation, fiduciary defalcation, larceny, and willful and malicious injury.[3]  The bankruptcy court ruled for Dan, however, under § 523(a)(4)'s embezzlement exception—it held that Deborah's liquidation of the funds on which she was a joint account holder constituted embezzlement.  The bankruptcy court entered a final order and judgment to this effect.

Deborah appealed to the district court the bankruptcy court's finding that Dan's judgment against her was nondischargeable under § 523(a)(4).  Deborah argued that Dan had not established, by a preponderance of the evidence, that she had "fraudulent intent" when she liquidated Morton's accounts. The district court agreed, ruled that the bankruptcy court erred when it found for Dan under § 523(a)(4)'s embezzlement exception, and entered judgment for Deborah.

Dan noted a timely appeal, and we have jurisdiction.  28 U.S.C. § 158(d).

II.

A.

---

[3] Dan never appealed the bankruptcy court's rulings on these claims, and they are not before us.

"We review the district court's decision by applying the same standard of review that it applied to the bankruptcy court's decision. That is, we review findings of fact for clear error and conclusions of law *de novo*." *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999) (internal citations omitted).

" 'Clear error' is a 'very deferential standard of review.' " *Walsh v. Vinoskey*, 19 F.4th 672, 677 (4th Cir. 2021) (quoting *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012)). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *HSBC Bank USA v. F & M Bank N. Va.*, 246 F.3d 335, 338 (4th Cir. 2001) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "For clear error review, our inquiry is not whether we would have reached the same result if we were sitting in the district court's shoes." *Walsh*, 19 F.4th at 677. "Rather, we review '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety.' " *Id.* (quoting *United States v. Thorson*, 633 F.3d 312, 317 (4th Cir. 2011)). "If so, we may not reverse the district court's conclusion—even if we may have weighed the evidence differently." *Id.* "This is the case 'even when the district court's findings do not rest on credibility determinations but are based on physical or documentary evidence or inferences from other facts.' " *Id*. (quoting *Thorson*, 633 F.3d at 317).

B.

Section 523(a)(4) excepts debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." "The elements of embezzlement . . . are established

7

by federal common law, rather than state law." *See In re Cockey*, 622 B.R. 178, 188 (Bankr. D. Md. 2020) (citations omitted); *United States v. Patton*, 120 F.2d 73, 75 (3d Cir. 1941) ("It is . . . well settled that when a federal statute uses a term known to the common law to designate a common law offense and does not define that term, courts . . . construe [the term using its] common law meaning.").

Embezzlement requires the plaintiff to prove: "(1) that the funds were rightfully in the possession of the Debtor; (2) that the Debtor appropriated the funds for a use other than that for which it was entrusted; and (3) circumstances indicating fraud." *In re Cockey*, 622 B.R. at 188 (collecting cases); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) ("Embezzlement is defined for purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.") (citations omitted).

"To meet the definition of 'embezzlement,' there must be proof of the debtor's fraudulent intent in taking the property." *In re Miller*, 156 F.3d at 602–03 (collecting cases); *see also, e.g.*, *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 117 (B.A.P. 6th Cir. 2007) (noting that embezzlement under § 523(a)(4) requires actual, intentional fraud and citing cases). Fraudulent intent means intent to defraud, to deceive, or to act in bad faith. *See In re Kaplan*, 608 B.R. 443, 457 (Bankr. E.D. Pa. 2019); *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274–75 (2013) (noting that both embezzlement and larceny require a showing of wrongful intent—such as a showing of moral turpitude, intentional wrong, or felonious intent); *see also Alternity Capital Offering 2, LLC v.*

8

*Ghaemi (In re Ghaemi)*, 492 B.R. 321, 326 (Bankr. D. Colo. 2013) ("Historically, both larceny and embezzlement have consistently had a criminal intent requirement.").

It is not enough to show that the debtor took property belonging to the plaintiff without consent and without lawful justification—i.e., that the debtor converted the plaintiff's property. *See In re Cockey*, 622 B.R. at 189. The plaintiff must show that the debtor had a fraudulent or unlawful intent, directed at the plaintiff, at the time of the claimed misappropriation. *See In re Ghaemi*, 492 B.R. at 326 (noting that embezzlement differs from conversion because embezzlement requires criminal intent, while conversion requires only a specific intent to take the property); *In re Kaplan*, 608 B.R. at 457 (stating that embezzlement requires proof of fraudulent intent directed at the owner, while conversion requires only the simple intent to exercise dominion or control over property that is inconsistent with the owner's rights). Where the debtor's dominant purpose is to benefit herself, rather than to harm the creditor, fraudulent intent is not established. *See In re Fox*, 370 B.R. at 117–18 (finding that because debtor's intent in withdrawing funds was to recoup his capital investment and benefit his own property, rather than to harm the creditor, the debtor did not have the requisite intent). Indeed, one can wrongfully appropriate property under a mistaken belief of entitlement without giving rise to a claim of embezzlement. *See, e.g.*, *Great Am. Ins. Co. v. Storms (In re Storms)*, 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983) ("Even where the facts of a case show some relation of trust requiring a debtor to hold funds for another, the debtor's subsequent appropriation of the funds will not amount to embezzlement absent proof of the debtor's fraudulent intent.").

9

The standard of proof in a discharge action is the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("[W]e hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *see also Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 & n.17 (4th Cir. 1994) (same).

III.

The fundamental issue is whether Dan adduced sufficient evidence during trial to support the bankruptcy court's finding that Deborah had "fraudulent intent." Dan argues that he did and Deborah that he did not. The bankruptcy court's reasoning for finding Deborah had fraudulent intent and embezzled Dan's money is reproduced in full:

> In this case, the financial institutions, knowing only that [Deborah] was a joint account holder, advised her that she was entitled to liquidate the accounts. As a joint account holder, she came into the money from her father's Estate lawfully. She then refused to turn the money over to [Dan] as Executor of her father's Estate. In doing so, she exercised control and dominion over the funds, wrongfully. [Deborah] had actual knowledge of the terms of her father's Will when he was still in the hospital. She testified that she retrieved a copy of the Will and brought it to the hospital. She acknowledged that [Dan] told her of the Agreement between her father and [Peggy] shortly thereafter. This conduct meets the very definition of embezzlement. Further, in knowing the terms of the Will, [Deborah] had fraudulent intent in not turning the property over to [Dan] as Executor.

J.A. 262.

The bankruptcy court's fraudulent intent analysis rests on a clear factual error that undermines its embezzlement finding. The bankruptcy court was correct that Deborah read and understood Morton's will. But it misstated other facts relevant to Deborah's mindset

10

when she liquidated the accounts on which she was a joint account holder. Said differently, the bankruptcy court misstated facts crucial to whether Deborah had a good-faith belief that the funds in question were hers.

The bankruptcy court implied that, when Deborah contacted the bank, she hid the existence of both Morton's will and the Agreement. *Id.* 262 ("In this case, the financial institutions, knowing only that [Deborah] was a joint account holder, advised her that she was entitled to liquidate the accounts."). The evidence on this point, however, was undisputed—Deborah *did* tell the bank about both documents. And it was with knowledge of Morton's will and the Agreement that the bank reassured Deborah that the funds in the joint account belonged to her, not Dan. *Id.* 386. Similar can be said of Deborah's beliefs as to Morton's CDs, annuities, and life insurance policy. *See id.* 390–91, 393–94.

The bankruptcy court's omission of these details from its analysis matters. The bankruptcy court held that because Deborah knew the terms of Morton's will, Deborah's not turning over the funds to Dan at Morton's death was the "very definition of embezzlement." *Id.* 262. But the bank told Deborah that her status as a joint account holder entitled her to liquidate the disputed funds. Deborah therefore established a good-faith belief that the funds in question were hers, precluding an embezzlement finding. *See, e.g.*, *United States v. Stockton*, 788 F.2d 210, 217 (4th Cir. 1986) (noting, in the criminal context, that "[a] defendant who exercises dominion over property in the good-faith belief that the property is his own, or that the appropriation is otherwise authorized, is not guilty of embezzlement"); *In re Cockey*, 622 B.R. at 189 ("Fraudulent intent means intent to defraud, to deceive, or to act in bad faith."); *In re Ghaemi*, 492 B.R. at 326 ("Historically,

11

both larceny and embezzlement have consistently had a criminal intent requirement."); *see also Bullock*, 569 U.S. at 274–75 (noting that both embezzlement and larceny require a showing of wrongful intent—such as a showing of moral turpitude, intentional wrong, or felonious intent). For his part, Dan did not introduce any evidence to rebut or undermine Deborah's good-faith belief that the funds in question rightfully belonged to her. Accordingly, the bankruptcy court erred in finding that Deborah embezzled Dan's money, and the district court correctly reversed the bankruptcy court's judgment for Dan.[4]

## IV.

For the reasons stated above, the district court's order overruling the bankruptcy court's embezzlement verdict in Dan's favor and entering judgment for Deborah is

*AFFIRMED*.

---

[4] In its memorandum opinion reversing the bankruptcy court's embezzlement finding, the district court attempted to recalculate the amount of Dan's money which Deborah could have theoretically embezzled, and which therefore might be nondischargeable. *See In re Parker*, 653 B.R. 765, 789 (E.D. Va. 2023) (applying Virginia law and concluding that only $96,566.35 of Dan's $151,501.00 state court judgment constituted "property belonging to another" that Deborah could have embezzled under § 523(a)(4)). This effort likely violated our case law. *See In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001) (noting that "when a prior state court judgment is the debt at issue, we are of opinion that the bankruptcy court, in an adversary proceeding to determine whether the debt is dischargeable, cannot issue its own judgment on the debt to replace the state court judgment previously obtained"). Nevertheless, because Dan cannot establish fraudulent intent, his embezzlement claim necessarily fails, and any such error by the district court is harmless.